UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____

MARCEL CLARKE,

        Plaintiff,

vs.

V.SHIPS USA LLC,
a Florida limited liability company,
*d/b/a* V.SHIPS,

        Defendant.

_____/

### SEAMAN'S COMPLAINT FOR MARITIME PERSONAL INJURY WITH DEMAND FOR JURY TRIAL

Plaintiff Seaman MARCEL CLARKE ("Seaman CLARKE") sues Defendant V.SHIPS USA LLC, *d/b/a* V.SHIPS ("Defendant V.SHIPS"), and alleges:

### JURISDICTION

1.    The within action is within the diversity jurisdiction of this Court pursuant to 28 U.S.C. § 1332.

2.    The within action is for damages involving a sum, exclusive of interest and costs, in excess of $75,000.00.

3.    The within action is within the admiralty and maritime jurisdiction of this Court pursuant to 28 U.S.C. § 1333.

4.    The within action is within the federal question jurisdiction of this Court pursuant to 28 U.S.C. § 1331.

### RIGHTS AND REMEDIES

5.    The within actions for Jones Act Negligence (Count I) and Failure to Treat (Count IV) seek full compensatory tort damages for maritime personal injuries to a seaman and arise under the

Case No. _____

provisions of 46 U.S.C. § 30104, commonly referred to as the "Jones Act."

6.    The within action for <u>Failure to Treat</u> (<u>Count IV</u>) arises under the Jones Act and is stated separately from the <u>Jones Act Negligence</u> (<u>Count I</u>) action as its own separate claim for relief. *See*, *e.g.*, <u>Joyce v. Atlantic Richfield Company</u>, 651 F.2d 676, 685 (10th Cir. 1981) ("Negligent failure to provide prompt medical attention to a seriously injured seaman gives rise to a separate claim for relief").

7.    The within action for <u>Unseaworthiness</u> (<u>Count II</u>) seeks full compensatory tort damages for maritime personal injuries to a seaman and arises under the General Maritime Law of the United States.

8.    The within action for <u>Maintenance and Cure</u> (<u>Count III</u>) seeks full compensatory tort damages with awards of attorney's fees and/or maritime law punitive damages for the willful, callous, and wrongful delays and/or failures in tendering "Maintenance" and "Cure" to an ill and/or injured seaman and arises under the General Maritime Law of the United States.

9.    The "Maintenance" remedy is the entitlement of seamen who fall sick or are injured while in the service of their ship to be paid for their food, lodging, and transportation to medical appointments until such point as they are medically declared, without conflicting medical opinion, to be at Maximum Medical Improvement ("MMI").

2

Case No. _____

10.   The "Cure" remedy is the entitlement of seamen who fall sick or are injured while in the service of their ship to be provided with prompt, proper, and adequate medical care and treatment until they are medically declared, without conflicting medical opinion, to be at MMI.

11.   All of the within actions are based on claims arising under federal laws within the meaning of Rule 4(k)(2), Federal Rules of Civil Procedure.

12.   Seaman CLARKE is entitled to institute and prosecute this action without the prepayment of fees or costs, or furnishing security for same, under authority of 28 U.S.C. § 1916.

## IDENTIFICATION OF THE PARTIES

### Seaman CLARKE

13.   At all material times hereto, Seaman CLARKE was, and still is, a citizen and resident of Guyana.

14.   At all times material hereto, Seaman CLARKE was a merchant seaman crewmember in the service of the *M/V "SALTINA," M/T "TRADEWIND PASSION,"* and/or *M/T "TRADEWIND PALM"* as an Able Bodied Seaman.

### Defendant V.SHIPS

15.   At all material times hereto, Defendant V.SHIPS was, and still is, a Florida limited liability company doing business as "V.SHIPS" with substantial and not isolated business contacts in the United States with a principal place of business and/or a base of operations at  Portside Yachting Center, 1850 S.E. 17th Street

3

Case No. _____

Causeway, Suite 200, Fort Lauderdale, Florida, and/or other address within this District.

16.   Defendant V.SHIPS is subject to the jurisdiction of this Court pursuant to 46 U.S.C. § 30104, the "Jones Act"; the General Maritime Law of the United States; and Rule 4, Federal Rules of Civil Procedure.

17.   At all times material hereto, Defendant V.SHIPS was, and still is, doing business with substantial nationwide business contacts in the United States within the meaning of Rule 4(k)(2), Federal Rules of Civil Procedure.

18.   At all times material hereto, Defendant V.SHIPS, through its officers, employees, and/or agents, committed one or more of the acts set forth in Sections 48.081, 48.181, 48.19, and/or 48.193, Florida Statutes.

### M/V "SALTINA"

19.   At all times material hereto, Defendant V.SHIPS, through its officers, employees, and/or agents, owned, operated, chartered, managed, navigated, maintained, acted as agents for, and/or was the owner *pro hac vice* of the M/V "SALTINA," which was an ocean going bulk cargo vessel used for the transportation of chemical and/or petroleum products in the United States East Coast and Caribbean trade.

### M/T "TRADEWIND PASSION"

20.   At all times material hereto, Defendant V.SHIPS, through its officers, employees, and/or agents, owned, operated, chartered, managed, navigated, maintained, acted as agents for, and/or was the

4

Case No. _____

owner *pro hac vice* of the *M/T "TRADEWIND PASSION,"* which is an ocean going tanker vessel used for the transportation of chemical and/or petroleum products in the United States East Coast and Caribbean trade.

### *M/T "TRADEWIND PALM"*

21.   At all times material hereto, Defendant V.SHIPS, through its officers, employees, and/or agents, owned, operated, chartered, managed, navigated, maintained, acted as agents for, and/or was the owner *pro hac vice* of the *M/T "TRADEWIND PALM,"* which is an ocean going tanker vessel used for the transportation of chemical and/or petroleum products in the United States East Coast and Caribbean trade.

### Employee/Borrowed Servant

22.   At all times material hereto, Seaman CLARKE was employed by Defendant V.SHIPS, either directly or as its borrowed servant, as a merchant seaman crewmember in the service of the *M/V "SALTINA," M/T "TRADEWIND PASSION,"* and/or *M/T "TRADEWIND PALM"* as an Able Bodied Seaman.

23.   On information and belief, Defendant V.SHIPS at all times material hereto:

a.   Had the power to or did control and direct Seaman CLARKE; and/or

b.   Had the power to or did control and direct the work Seaman CLARKE performed; and/or

c.   Had an agreement and/or understanding with Seaman CLARKE's nominal employer(s) as to Defendant V.SHIPS having the

5

Case No. _____

power to control and direct Seaman CLARKE and the work he performed; and/or

      d.  Had the power to discharge Seaman CLARKE from his employment; and/or

      e.  Had the obligation to and did pay Seaman CLARKE.

    24.  On information and belief, the decisions made with respect to both the provision and wrongful withholding of and/or failure to provide the Maintenance and Cure to which Seaman CLARKE was, and still is, properly entitled to under the law were made by Defendant V.SHIPS at its principal place of business and/or a base of operations within this District.

<strong><u>VENUE</u></strong>

    25.  Venue is proper before this Court since Defendant V.SHIPS has its principal place of business and/or a base of operations within this District.

<strong><u>ALLEGATIONS COMMON TO ALL COUNTS</u></strong>

<strong><u>M/V "SALTINA"</u></strong>

    26.  In September 2013, Seaman CLARKE was serving aboard the M/V "SALTINA" as an Able Bodied Seaman and member of her crew.

    27.  At some point during mid-September 2013, Seaman CLARKE began to experience pain in his chest and jaw and also started coughing and spitting up blood and/or blood stained mucus (which, in medical terms, is called "hemoptysis"), and he reported same to his shipboard chain of command.

    28.  On October 5, 2015, and only after he had otherwise sustained a work-related crush injury to one of his fingers, Seaman

6

Case No. _____

CLARKE was sent ashore in Houston, Texas and seen in the emergency room at the East Houston Regional Medical Center.

29.   A chest x-ray was taken of Seaman CLARKE at that time which was read as normal, but no specific cause for his hemoptysis was determined and he was declared fit for duty and returned to his shipboard duties.

## M/T "TRADEWIND PASSION"

30.   On or about March 8, 2014, Seaman CLARKE then signed-on to the M/T "TRADEWIND PASSION" as an Able Bodied Seaman and member of her crew.

31.   During the course of his service as an Able Bodied Seaman on the M/T "TRADEWIND PASSION," Seaman CLARKE continued to experience episodes of hemoptysis, for which he sought medical attention while still being required to perform his shipboard duties.

32.   On or about September 2, 2014, Seaman CLARKE signed-off of the M/T "TRADEWIND PASSION."

## M/T "TRADEWIND PALM"

33.   On or about February 25, 2015, Seaman CLARKE then signed-on to the M/T "TRADEWIND PALM" as Able Bodied Seaman and member of her crew.

34.   During the course of his service as an Able Bodied Seaman on the M/T "TRADEWIND PALM," Seaman CLARKE continued to experience repeated episodes of hemoptysis for which he again sought medical attention while still being required to perform his shipboard duties.

7

Case No. _____

35.   On or about July 15, 2015, Seaman CLARKE was sent shoreside in Suriname where he was again diagnosed with hemoptysis, which was then said to be due to an arterio-venons malformation.

36.   At that time, Seaman CLARKE was given some Vitamin K to help his blood to clot and told he needed an embolization procedure, but that the medical facility in Suriname was not properly equipped to treat him.

37.   Seaman CLARKE was then sent shoreside in Trinidad on or about July 18, 2015, but he was likewise told that the medical facility in Trinidad was not properly equipped to treat him.

38.   At that time, it was also recommended that Seaman CLARKE be sent to a properly equipped medical facility in Martinique.

39.   Despite the recommendation that he be sent to a properly equipped medical facility in Martinique, Seaman CLARKE was instead back home to his home country of Guyana.

40.   On or about July 29, 2015, Seaman CLARKE was evaluated at a medical facility in Guyana where, in addition to a skin test for tuberculosis measuring 15mm which was strongly positive, a CT Scan obtained at that time was interpreted as consistent with tuberculosis and also showed a "fungus ball" consistent with aspergilloses.

41.   Seaman CLARKE has since had to seek his own medical care for his active tuberculosis, but has yet to receive prompt, proper, and adequate medical care and treatment for the fungus ball in his chest and his aspergillosis.

8

Case No. _____

42.   Seaman CLARKE continues to suffer from hemoptysis, the fungus ball in his chest, and aspergillosis, all of which are affecting his ability to work and/or carry out many daily living activities.

43.   Seaman CLARKE continues to require prompt, proper, and adequate medical care and treatment and has requested that Defendant V.SHIPS provide same, but Defendant V.SHIPS has willfully, callously, and wrongfully ignored his requests.

44.   Seaman CLARKE is entitled to Maintenance and Cure and has requested that Defendant V.SHIPS provide same, but Defendant V.SHIPS has willfully, callously, and wrongfully ignored his requests.

45.   Defendant V.SHIPS' delay in diagnosing Seaman CLARKE's active tuberculosis, the fungus ball in his chest, and aspergillosis all fell below the standard of care and caused and continues to cause him to suffer needless pain and suffering.

46.   Defendant V.SHIPS' failure to provide Seaman CLARKE with Maintenance and Cure was and is willful, callous, and wrongful, and this failure has not only aggravated his medical condition, but has caused and continues to cause him to suffer needless pain and suffering.

47.   Defendant V.SHIPS' failure to provide Seaman CLARKE with prompt, proper, and adequate medical care and treatment was and is willful, callous, and wrongful, and this failure has not only aggravated his medical condition, but has caused and continues to cause him to suffer needless pain and suffering.

9

Case No. _____

48.   On information and belief, the working environment which Defendant V.SHIPS provided to Seaman CLARKE aboard the *M/V "SALTINA," M/T "TRADEWIND PASSION,"* and/or *M/T "TRADEWIND PALM"* was unsafe in that, among other things, it exposed him to infections which resulted in him acquiring active tuberculosis, the fungus ball in his chest, and/or aspergillosis.

49.   On information and belief, the *M/V "SALTINA," M/T "TRADEWIND PASSION,"* and/or *M/T "TRADEWIND PALM"* were Unseaworthy in that, among other things, they exposed him to infections which resulted in him acquiring active tuberculosis, the fungus ball in his chest, and/or aspergillosis.

50.   Seaman CLARKE's medical records have already been reviewed by board certified internist and specialist in community health, ARTHUR M. FOURNIER, M.D., whose preliminary medical opinions include:

    a.   Seaman CLARKE's initial evaluation on October 5, 2015 at the East Houston Regional Medical Center in Houston, Texas fell below the standard of care:

    b.   There was a needless delay of over twenty-one months (almost two-years) in diagnosing Seaman CLARKE's active tuberculosis; and

    c.   Seaman CLARKE's aspergillosis was never treated in accordance with modern standards of care.

10

Case No. _____

## COUNT I

### JONES ACT NEGLIGENCE

51.   Seaman CLARKE references, incorporates, and realleges the allegations of Paragraphs 1 through 50 as fully as if set forth herein.

52.   At all times material hereto, Defendant V.SHIPS owed a duty to Seaman CLARKE to provide a safe place to work and to maintain the *M/V "SALTINA," M/T "TRADEWIND PASSION,"* and *M/T "TRADEWIND PALM"* in a reasonably safe condition.

53.   Defendant V.SHIPS, through its officers, employees, and/or agents, breached its duty owed to Seaman CLARKE by committing one or more of the following acts:

    a.   Negligently failing to use reasonable care to provide and maintain a safe place to work for Seaman CLARKE; and/or

    b.   Negligently failing to use reasonable care to promulgate and enforce reasonable rules, regulations, and procedures to ensure the safety and health of Seaman CLARKE while he was engaged in the course and scope of his duties as an Able Bodied Seaman in the service of the *M/V "SALTINA," M/T "TRADEWIND PASSION,"* and *M/T "TRADEWIND PALM"*; and/or

    c.   Negligently failing to use reasonable care to discover the aforedescribed dangerous conditions when a reasonable inspection would have disclosed the existence of said dangerous conditions; and/or

    d.   Negligently failing to warn Seaman CLARKE of the aforedescribed dangerous conditions when the existence of said

11

Case No. _____

dangerous conditions and deficiencies was or should have been known to Defendant V.SHIPS.

54.  As a direct and proximate result of the negligence of Defendant V.SHIPS through its officers, employees, and/or agents, Seaman CLARKE sustained bodily injury and resulting pain and suffering, disability and disfigurement, mental anguish, loss of capacity for enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previous existing condition. The losses are either permanent or continuing and Seaman CLARKE will suffer such losses in the future.

WHEREFORE, Seaman CLARKE demands trial by jury and requests this Court enter judgment against Defendant V.SHIPS compensatory tort damages, pre- and post-judgment interest, costs of suit, and such other or further relief as this Court deems just and proper.

## COUNT II

### UNSEAWORTHINESS

55.  Seaman CLARKE references, incorporates, and realleges the allegations of Paragraphs 1 through 50 as fully as if set forth herein.

56.  At all times material hereto, Defendant V.SHIPS had an absolute non-delegable duty to provide Seaman CLARKE with a seaworthy vessel.

57.  Defendant V.SHIPS, through its officers, employees, and/or agents, breached its duty owed to Seaman CLARKE when the *M/V*

12

Case No. _____

"*SALTINA*," *M/T* "*TRADEWIND PASSION*," and *M/T* "*TRADEWIND PALM*" were
unseaworthy for the following reasons:

      a.   Failing to provide timely and adequate medical
treatment; and/or

      b.   Failing to provide a seaworthy vessel fit with
adequately trained and experienced crew who should have recognized,
and acted upon, the need for Seaman CLARKE to be provided with
timely and adequate medical treatment; and/or

      c.   Failing to take all reasonable measures and steps
necessary to provide prompt, proper, and adequate medical care and
treatment to Seaman CLARKE; and/or

      d.   Failing to, in fact, provide prompt, proper, and
adequate medical care and treatment to Seaman CLARKE; and/or

      e.   Failing to have and enforce reasonable rules,
regulations, and procedures to ensure the safety and health of
Seaman CLARKE; and/or

      f.   Failing to discover the aforedescribed unseaworthy
conditions when a reasonable inspection would have disclosed the
existence of said conditions; and/or

      g.   Failing to warn Seaman CLARKE of the aforedescribed
unseaworthy conditions when the existence of said conditions was or
should have been known to Defendant V.SHIPS.

   58.   As a direct and proximate result of the Unseaworthiness
of the *M/V* "*SALTINA*," *M/T* "*TRADEWIND PASSION*," and *M/T* "*TRADEWIND
PALM*," Seaman CLARKE sustained bodily injury and resulting pain and
suffering, disability and disfigurement, mental anguish, loss of

13

Case No. _____

capacity for enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previous existing condition. The losses are either permanent or continuing and Seaman CLARKE will suffer such losses in the future.

WHEREFORE, Seaman CLARKE demands trial by jury and requests this Court enter judgment against Defendant V.SHIPS for compensatory tort damages, pre- and post-judgment interest, costs of suit, and such other or further relief as this Court deems just and proper.

## COUNT III

### MAINTENANCE AND CURE

59. Seaman CLARKE references, incorporates, and realleges the allegations of Paragraphs 1 through 50 as fully as if set forth herein.

60. At all times material hereto, Defendant V.SHIPS owed a duty under the General Maritime Law of the United States to provide Seaman CLARKE with prompt, proper, and adequate Maintenance and Cure upon his falling sick or being injured while in the service of the M/V "SALTINA," M/T "TRADEWIND PASSION," and M/T "TRADEWIND PALM."

61. The Maintenance and Cure to which Seaman CLARKE is entitled will continue to become due and owing to him until such point as he is medically declared, without conflicting medical opinion, to be at MMI.

14

Case No. _____

62.   The duty owed by Defendant V.SHIPS to provide Seaman CLARKE with Maintenance and Cure includes the duty to timely take all reasonable measures and steps necessary to provide prompt, proper, and adequate medical care and treatment until such time as he is medically declared, without conflicting medical opinion, to be at MMI.

63.   The duty owed by Defendant V.SHIPS to provide Seaman CLARKE with Maintenance and Cure further includes the duty to, in fact, timely provide such prompt, proper, and adequate medical care and treatment until such point as he is medically declared, without conflicting medical opinion, to be at MMI.

64.   Defendant V.SHIPS, through its agents, servants, and/or employees, breached its duty owed to Seaman CLARKE by reason of the following:

a.   Failing to provide prompt, proper, and adequate medical care and treatment to Seaman CLARKE; and/or

b.   Failing to take all reasonable measures and steps necessary to provide prompt, proper, and adequate medical care and treatment to Seaman CLARKE; and/or

c.   Failing to timely and without unnecessary delay provide prompt, proper, and adequate medical care and treatment to Seaman CLARKE; and/or

d.   Failing to, in fact, provide prompt, proper, and adequate medical care and treatment to Seaman CLARKE.

65.   As a direct and proximate result of the failure of Defendant V.SHIPS, through its officers, employees, and/or agents,

15

Case No. _____

to timely discharge its duty to provide prompt, proper, and adequate Maintenance and Cure to Seaman CLARKE without unnecessary delay, Seaman CLARKE sustained bodily injury and resulting pain and suffering, disability and disfigurement, mental anguish, loss of capacity for enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previous existing condition. The losses are either permanent or continuing and Seaman CLARKE will suffer such losses in the future.

WHEREFORE, Seaman CLARKE demands trial by jury and requests this Court enter judgment against Defendant V.SHIPS for compensatory tort damages, pre- and post-judgment interest, costs of suit, attorney's fees and/or punitive damages as provided for under the General Maritime Law of the United States, and such other or further relief as this Court deems just and proper.

## COUNT IV

### FAILURE TO TREAT

66.   Seaman CLARKE references, incorporates, and realleges the allegations of Paragraphs 1 through 50 as fully as if set forth herein.

67.   At all times material hereto, Defendant V.SHIPS owed a duty to Seaman CLARKE to provide him with prompt, proper, and adequate medical care and treatment.

68.   Defendant V.SHIPS, through its officers, employees, and/or agents, breached its duty owed to Seaman CLARKE by committing one or more of the following acts:

16

Case No. _____

     a.   Negligently failing to use reasonable care to provide prompt, proper, and adequate medical care and treatment to Seaman CLARKE; and/or

     b.   Negligently failing to use reasonable care to take all reasonable measures and steps necessary to provide prompt, proper, and adequate medical care and treatment to Seaman CLARKE; and/or

     c.   Negligently failing to use reasonable care to timely and without unnecessary delay provide prompt, proper, and adequate medical care and treatment to Seaman CLARKE; and/or

     d.   Negligently failing to, in fact, provide prompt, proper, and adequate medical care and treatment to Seaman CLARKE.

69.  As a direct and proximate result of the negligent failure of Defendant V.SHIPS, through its officers, employees, and/or agents, to timely discharge its duty to provide prompt, proper, and adequate medical care and treatment to Seaman CLARKE without unnecessary delay, Seaman CLARKE sustained bodily injury and resulting pain and suffering, disability and disfigurement, mental anguish, loss of capacity for enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previous existing condition. The losses are either permanent or continuing and Seaman CLARKE will suffer such losses in the future.

WHEREFORE, Seaman CLARKE demands trial by jury and requests this Court enter judgment against Defendant V.SHIPS for compensatory tort damages, pre- and post-judgment interest, costs

17

Case No. _____

of suit, and such other or further relief as this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Seaman CLARKE demands trial by jury of all issues so triable as of right.

Respectfully submitted,

SOTOLONGO LAW
Attorneys for Plaintiff Seaman
MARCEL CLARKE
44 West Flagler Street
Suite 1700
Miami, Florida  33130
(305)415-0073

- and -

NICOLAS G. SAKELLIS, P.A.
Co-Counsel for Plaintiff Seaman
MARCEL CLARKE
44 West Flagler Street
Suite 750
Miami, Florida  33130
(305) 577-4221
(305) 577-3341 Facsimile

By: _____
NICOLAS G. SAKELLIS
Florida Bar No. 939269
nsakellis@att.net

PETER P. SOTOLONGO
Florida Bar. No. 584101
psotolongo@sotolongolaw.com

18